**Glenda JACKSON, Individually and on behalf of others similarly situated, Plaintiff,**

**v.**

**William R. RAPPS, Individually and as Director of the Missouri Division of Child Support Enforcement, Defendant.**

No. 89–4022–CV–C–5.

United States District Court, W.D. Missouri, C.D.

Aug. 13, 1990.

See also 746 F.Supp. 934.

Jim R. Bruce, Kennett, Mo., for plaintiff.

William Cornwell, B.J. Jones, Missouri Atty. Gen.'s Office, Jefferson City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, District Judge.

Before this Court is the motion of plaintiff Glenda Jackson for class action certification in a 42 U.S.C. § 1983 action against defendant William R. Rapps, Director of the Missouri Division of Child Support Enforcement. Ms. Jackson challenges the Director's method of setting the amounts allegedly owed by the non-custodial parent to the State as reimbursement for the State's Aid to Dependent Children payments to the children of the non-custodial parents. Ms. Jackson alleges that the Director's method violates the United States Constitution. In accordance with the reasoning in this order, this Court grants plaintiff's motion for class action certification.

### I. FACTUAL BACKGROUND

A. Statutory Framework

The State of Missouri, through the Division of Child Support Enforcement ("DCSE"), participates in the joint state/federal Child Support Enforcement Program under Title IV–D of the Social Security Act, 42 U.S.C. § 651–665 (1988), and the Federal Regulations promulgated pursuant to the Act, 45 C.F.R. § 302.1–307.12 (1989). Under federal law, the DCSE is responsible for the administration of the program in the State of Missouri. The State is required to adopt a state plan in conformity with the Federal Regulations established for the administration of the program by the United States Department of Health and Human Services. 45 C.F.R. § 302.1–302.12 (1989).

The Federal Regulations and state statutes require that all applicants for Aid to Families with Dependent Children ("AFDC") assign to the State any rights to support owed from any other person, which includes child support payments. 45 C.F.R. § 232.11(a)(1) (1989); Mo.Rev.Stat. § 208.040 (Supp.1990). The Federal Regulations and the state statutes also provide methods for determination of the amount of any support owed in the form of arrearages and future child support payments. The Federal Regulations provide two alternative methods of determining the amount owed:

(a) the support rights assigned to the IV–D agency pursuant to [45 C.F.R.] § 232.11 of this title or section 471(a)(17) of the Act constitute an obligation owed to the State by the individual responsible for providing such support. Such obligation shall be established by:

(1) Order of a court of competent jurisdiction,

(2) Other legal process as established by State law, such as an administrative hearing process or a legally enforceable and binding agreement;

\*  \*  \*  \*  \*  \*

(b) The amount of the obligation described in paragraph (a) of this section shall be:

(1) The amount specified in the order of a court of competent jurisdiction which covers the assigned support rights; or

(2) If there is no court order, an amount determined by the IV–D agency as part of the legal process referred to in paragraph (a)(2) of this section in accordance with a formula which

meets the criteria prescribed in § 302.53.

45 C.F.R. § 302.50 (1989).

Missouri's state plan for child support enforcement, as originally enacted in response to the federal mandate, provided that where no court order addressed the duty to provide support, that the State would administratively establish support arrearages to be referred to as the "state debt." The original Missouri statute did not require the use of a formula for calculation of arrearages, but stated that "state debt" would be equal to the amount of public assistance paid out. As originally enacted in 1982, § 454.465 provided:

> [P]ayment of public assistance by the division ... creates an obligation, to be called "state debt," which is due and owing to the division ... in an amount equal to the amount of public assistance so paid.

The Missouri statute was amended in 1984 after initiation of a suit challenging the constitutionality of the statute based on failure to use the federally mandated formula.

The current Missouri statute has language similar to the federal statute, except that under the state statute the obligation, or "state debt," is not determined by a formula, but is set by the Director of the DCSE:

> (1) Where there exists a court order directed to a parent which covers that parent's support obligation to a dependent during a period in which the Division of Family Services provided public assistance to or for the benefit of that dependent, the state debt of the parent shall be an amount equal to the obligation ordered by the court including arrearages and unpaid medical expenses, up to the full amount of public assistance paid, or (2) Where no court order covers a parent's support obligation to a dependent during a period in which the Division of Family Services provided public assistance to or for the benefit of the dependent, the state debt may be set or reset by the director [of the Division of Child Support Enforcement or his designee] in an amount not to exceed the amount of public assistance so provided by the Division of Family Services.

Mo.Rev.Stat. §§ 454.465.1(2) & 454.460(4) (Supp.1990).

## B. Facts of the Case

Plaintiff Glenda Jackson is the mother of three children. Ms. Jackson was divorced from the father of her children on April 13, 1983. The father was awarded custody of the three minor children. Ms. Jackson was unemployed at that time, and neither she nor the father were ordered to pay child support.

Ms. Jackson subsequently filed a motion to modify the custody order by awarding to her the custody of the children along with child support payments. Ms. Jackson was granted leave of court to file her motion as a "poor person" without payment of a filing fee.

The circuit court on September 9, 1983 denied Ms. Jackson's motion subject to modifications and conditions provided in the order. One of the modifications allowed Ms. Jackson weekend visitation with the children. Another modification was a requirement mistakenly entered by the court that Ms. Jackson was to pay the father the sum of ten dollars ($10.00) a month per child for the three children while they were exercising visitation with Ms. Jackson.

The circuit court thereafter on October 4, 1983 entered a *nunc pro tunc* order stating that the September 9, 1983 order contained a "scrivener's error." The October 4, 1983 order stated that the September 9, 1983 order should have required the father to pay the mother, Ms. Jackson, the sum of ten dollars ($10.00) per month per child for the three children while they were exercising visitation with the mother, Ms. Jackson. The order did not require Ms. Jackson to pay child support.

The father began receiving AFDC payments in January of 1986. The prosecuting attorney for Dunklin County subsequently wrote to Ms. Jackson on October 31, 1988, stating the Division of Child Support Enforcement ("DCSE") had contacted him and requested that he seek a modification of

Ms. Jackson's divorce decree to require her to pay child support for her three children. Ms. Jackson had remarried at this time, and was working outside the home. Counsel for Ms. Jackson states that the assistant prosecutor for Dunklin County informed him on January 9, 1989 that the DCSE would not be seeking child support from Ms. Jackson.

The Director of the Missouri Division of Child Support Enforcement, William R. Rapps, ("Director"), on January 4, 1989 issued a Notice of Finding of Financial Responsibility, asserting that Ms. Jackson was responsible for repaying the state $11,064.00 as a "state debt" under §§ 454.460–454.510 of the Missouri statutes. The "state debt" was reimbursement for the public assistance (i.e. AFDC and Medicaid) paid out by the state on behalf of Ms. Jackson's children.

On April 26, 1989 the Missouri Department of Revenue intercepted the joint income tax refund of Ms. Jackson and her current husband in order to satisfy the $11,064.00 "state debt" claimed by the DCSE. Plaintiff Jackson then filed the present action on January 26, 1990.

Director Rapps subsequently entered an administrative default order for $11,064.00 and ordered Ms. Jackson to maintain medical insurance on the children. The administrative order was filed in the Dunklin County Circuit Clerk's office, and has the effect of a lien on property. Mo.Rev.Stat. § 454.465 (1986).

Director Rapps issued to Ms. Jackson's employer on March 23, 1990 an order requiring her employer to withhold $424.40 per month up to fifty per cent (50%) of Ms. Jackson's disposable earnings. The order stated that Ms. Jackson owed a debt to the state of $13,495.00, and support of $187.00 per month for the two remaining children (one child had reached the age of eighteen in the interim, and was no longer eligible for child support).

Ms. Jackson filed her claims under 42 U.S.C. § 1983, alleging violation of the due process and supremacy clauses of the United States Constitution. The constitutional violations are alleged to be the result of state action which does not comply with applicable federal law. Ms. Jackson alternatively alleges that the actions of Director Rapps do not comply with the state statute. The complaint demands declaratory and injunctive relief, compensatory damages in the amount $100,000.00, punitive damages in the amount of $750,000.00, and reasonable attorney's fees and costs under 42 U.S.C. § 1983.

Ms. Jackson has requested class certification for her 42 U.S.C. § 1983 suit, asserting that she represents the following two classes:

Class I: All non-custodial parents whose children receive or have received AFDC payments through the State of Missouri, and whose support obligations have not been established by an order of a court of competent jurisdiction.

Class II: All non-custodial parents whose children receive or have received AFDC benefits and against whom the Missouri Division of Child Support Enforcement has attempted to administratively establish or enforce a claim for "state debt" in an amount in excess of the sum provided in a decree of a court of competent jurisdiction covering the support obligation.

## II. ANALYSIS

### A. Standards for Class Action Certification

Rule 23 of the Federal Rules of Civil Procedure establishes the following conditions for class action certification: (1) the proposed class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interest of the class. Fed.R.Civ.P. 23(a).

A class action must also comply with one of three conditions listed in Rule 23(b). Ms. Jackson does not state in her memorandum in support of class action certification which of the three 23(b) requirements is met by her complaint. However, the

complaint itself states that the Director has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole. This statement is in compliance with the second of the three requirements in Rule 23(b). Fed.R.Civ.P. 23(b)(2).

Ms. Jackson has the burden of demonstrating that a class action may be properly maintained. *TBK Partners v. Chomeau*, 104 F.R.D. 127, 130 (E.D.Mo. 1985). The class determination is made at the pleading stage, so the substantive allegations of the plaintiff, Ms. Jackson, are accepted as true for the purposes of the class motion. *In re McDonnell Douglas Corporation Securities Litigation*, 98 F.R.D. 613 (E.D.Mo.1982). The Court may go beyond the pleadings in determining whether class action prerequisites have been met, but may not review the sufficiency or substantive merits of Ms. Jackson's allegations. *Ellis v. O'Hara*, 105 F.R.D. 556 (E.D.Mo.1985), *rev'd on other grounds*, 802 F.2d 462 (8th Cir.1986),

The class action determination must be based on the facts and circumstances of each individual case. *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1061 (8th Cir.1975). The Court must weigh two competing policies when making a class action determination. On the one hand is the policy of judicial economy and the convenience of maintaining a class action as opposed to the possibility of a multitude of individual actions. On the other hand is the need to guarantee adequate representation to class members. *Id.*

This Court will examine Ms. Jackson's motion for class action certification to determine if each requirement of Rule 23 of the Federal Rules of Civil Procedure has been met.

## B. Certification of Requested Classes

Ms. Jackson asserts that she represents the following two classes:

Class I: All non-custodial parents whose children receive or have received AFDC payments through the State of Missouri, and whose support obligations have not been established by an order of a court of competent jurisdiction.

Class II: All non-custodial parents whose children receive or have received AFDC benefits and against whom the Missouri Division of Child Support Enforcement has attempted to administratively establish or enforce a claim for "state debt" in an amount in excess of the sum provided in a decree of a court of competent jurisdiction covering the support obligation.

The request for certification of Class II is based on Ms. Jackson's assertion in her request for summary judgment that a prior court order established her child support obligation as $0.00. However, this Court has determined that the prior court order did not, in fact, establish her child support obligation. Therefore, this Court will deny Ms. Jackson's motion for certification of Class II.

## C. Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be so numerous that joinder of all members is "impractical." Impracticality does not mean impossibility, but only that the joinder of all members of the class would be difficult or inconvenient. *Esler v. Northrop Corp.*, 86 F.R.D. 20 (W.D.Mo.1979).

The potential class in the case at bar includes all non-custodial parents whose children receive or have received AFDC payments through the State of Missouri, and whose support obligations have not been established by an order of a court of competent jurisdiction. Ms. Jackson asserts in her memorandum in support of class certification the following: (1) that Defendant Henry stated in a recent affidavit made in a parallel action before this Court that the DCSE handles over 250,000 support cases; (2) that DCSE employee Pamela Clark testified in that parallel action that she personally was aware of over fifty cases in which the "state debt" had been administratively assessed against non-custodial parents in the Caruthersville, Missouri District Regional Office alone; and (3) that plaintiff's counsel has personally

inspected "well over one hundred administrative default orders" made by the Director in Dunklin County between 1983 and the present. Since it is the policy of the Director to set the "state debt" in an amount equal to the public assistance paid out, this Court concludes that such was the policy in each of the above-stated cases.

The substantive allegations of the plaintiff, Ms. Jackson, are accepted as true for the purposes of the class certification motion. *In re McDonnell Douglas Corporation Securities Litigation*, 98 F.R.D. 613 (E.D.Mo.1982). Therefore, accepting as true the above assertions, this Court finds that joinder of all parties would be inconvenient. This Court concludes that the case at bar meets the numerosity requirement for class action certification.

## D. Common Questions of Law and Fact

The second requirement for class action certification, as set forth in Rule 23(a)(2) of the Federal Rules of Civil Procedure, is that there be questions of law or fact common to the class. Common questions exist and predominate when there is "a common nucleus of operative facts even though there may be lacking complete identity." *TBK Partners v. Chomeau*, 104 F.R.D. 127 (E.D.Mo.1985).

Plaintiff Jackson has claimed that the actions of the Director are in violation of the Supremacy Clause. Defendants in the case at bar admit, and it is stated in the DCSE policy manual, that the DCSE's policy is to set the amount of "state debt" in an amount equal to the amount of public assistance paid out. Defendants further admit that they have not adopted a formula for setting the "state debt" in accordance with 42 U.S.C. § 656 and 45 C.F.R. § 302.53. These issues of law and these operative facts are common to the class that Ms. Jackson seeks to represent. Therefore, this Court concludes that plaintiff Glenda Jackson has met the second requirement for a class action, which is that questions of law or fact are common to the class.

## E. Typicality of the Claims of Representative Parties

The third requirement for maintenance of a class action is that the claims asserted by Ms. Jackson must be typical of the claims of each member of the class. Fed. R.Civ.P. 23(a)(3). As noted in *Kuenz v. Goodyear Tire and Rubber Co.*, 104 F.R.D. 474 (E.D.Mo.1985):

> [T]he typicality requirement is generally satisfied if the claims of both the class representative and the absent class members stem from a single event or are based on the same legal or remedial theory.

*Id.* at 477.

The courts in this Circuit have given the typicality requirement meaning independent of the commonality requirement by holding that Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). *See also Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 608 (8th Cir. 1983), *cert. denied*, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984).

In the case at bar it is easily shown that there are other members of the class who have the same grievance as named plaintiff Glenda Jackson, in accordance with the *Pillsbury* standard. Before this Court is a case which parallels the case at bar, stating the same grievance under the same legal theory. *Skelton v. Rapps*, Case No. 88–4232–CV–C–5. In addition, a prior suit was adjudicated in Missouri's Eastern District, also stating the same grievance under the same legal theory. *See Shipman v. Missouri Division of Family Services*, 588 F.Supp. 1203 (E.D.1984), *vacated and remanded*, 782 F.2d 1048 (8th Cir.1985). The grievances in all three cases are based on the same legal theory and arise from the same course of conduct as would the putative class members. All involve the Director's failure to set the "state debt" owed by each class member in accordance with the federally mandated formula.

This Court has reviewed the claim of the named class representative, Glenda Jackson. This Court has determined that Ms. Jackson has demonstrated that there are other members of the class who have the same or similar grievances, in accordance with the *Donaldson v. Pillsbury* standard. This Court concludes that plaintiff Glenda Jackson meets the typicality requirement for certification of a class action.

## F. Adequacy of Representation

The fourth requirement for class action certification, stated in Rule 23(a)(4) of the Federal Rules of Civil Procedure, requires that named plaintiff, Ms. Jackson, demonstrate that she will fairly and adequately represent the interest of the class. Ms. Jackson can demonstrate satisfaction of the fourth requirement "if there are no antagonistic interests between the named plaintiffs and the class members, and if plaintiff's counsel is competent to conduct the litigation." *Sperry Rand Corp. v. Larson*, 554 F.2d 868, 873–74 n. 17 (8th Cir.1977).

This Court will analyze the case at bar for compliance with the two *Sperry Rand* requirements. This Court can perceive no interests of the putative class members which would be antagonistic to those of the named plaintiff, Glenda Jackson. The claims of each class member would be based on the public assistance paid out for the children of each class member. The amount of recovery by each individual class member would be in accordance with the fact situation in each case. This Court can conceive of no fact situation which would pit one class member against another in their efforts to recover.

In regards to the second *Sperry Rand* requirement, the competency of plaintiff's counsel means that the attorney must be qualified, experienced and generally able to conduct the proposed litigation. 3B J. Moore & J. Kennedy, *Moore's Federal Practice* para. 23.07[1.–1] (2d ed.1987). Courts have been reluctant to predict inadequacy of counsel unless a conflict of interest is present. *Id.* at 34–194. Plaintiff's counsel's twelve years of practice before the federal bench and other credentials indicate that he is well qualified to serve as counsel for the class. This Court, therefore, concludes that the class action certification should not be denied due to the inadequacy of counsel.

■ Defendants argue that class action certification should be denied because plaintiff Jackson lacks adequate financial support to fully represent the needs of the putative plaintiff class. Plaintiff Jackson has the burden of showing that the resources are adequate to pursue the lawsuit to completion. *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427, 433 (W.D.Mo. 1973).

Plaintiff Jackson has submitted no financial information in support of her contention that she can fairly and adequately represent the interests of her class. However, plaintiff's counsel also represents plaintiff Skelton in the parallel case before this Court, *Skelton v. Rapps*, Case No. 88–4232–CV–C–5. Plaintiff's counsel also represented the plaintiff in the parallel case, *Shipman v. Missouri Division of Family Services*, 588 F.Supp. 1203 (E.D. 1984), *vacated and remanded*, 782 F.2d 1048 (8th Cir.1985). Plaintiff's counsel has submitted to this Court a great deal of information and material in connection with the case at bar and *Skelton* indicating that substantial discovery has been accomplished concerning the issue. It is readily apparent that little additional discovery is needed, and, therefore, that additional costs will be relatively low. This Court concludes that any lack of financial support would have little impact on named plaintiff Glenda Jackson's ability to fairly and adequately represent the interests of the class.

Based on the above information, this Court will not deny the class action certification based on defendant's contention that plaintiff Jackson lacks the financial support to pursue the action.

## III. CONCLUSION

This Court concludes that plaintiff Glenda Jackson has met her burden for class action certification. She has shown that the proposed class is so numerous that joinder of all members is impracticable,

that there are questions of law or fact common to the class, that her claims are typical of the claims of the class, and she can fairly and adequately protect the interest of the class. Ms. Jackson has also shown that the Director's action in regards to her case were on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

This Court's order granting plaintiff's summary judgment motion on the issue of liability states that defendant Directors are entitled to qualified immunity for their actions pursuant to the state child support enforcement statutes in force prior to the 1984 amendments. Therefore, the class requested by plaintiff Jackson must be restricted to those whose "state debts" were calculated pursuant to the post–1984 amended statute, and this Court will accordingly modify the requested class.

Defendants have stated their desire to appeal this Court's grant of class action certification. This Court is of the opinion that the issue of class action certification involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this order may materially advance the ultimate termination of the litigation. Therefore, this Court will order this issue certified for appeal, and will further order that all proceedings in the case at bar shall be stayed, pursuant to 28 U.S.C. § 1292(b).

Accordingly, it is hereby

ORDERED that plaintiff's motion for class action certification is granted, as modified by this Court, for the following class:

All non-custodial parents whose children receive or have received AFDC payments through the State of Missouri pursuant to the post–1984 amended statute, Mo. Rev.Stat. § 454.465, whose support obligations have not been established by an order of a court of competent jurisdiction, and whose "state debt" was set by the Director of the Division of Child Support Enforcement without consideration of the formula mandated by 45 C.F.R. § 302.50 and 45 C.F.R. § 302.53.

It is further

ORDERED that plaintiff's motion for class action certification is denied for the following class:

Class II: All non-custodial parents whose children receive or have received AFDC benefits and against whom the Missouri Division of Child Support Enforcement has attempted to administratively establish or enforce a claim for "state debt" in an amount in excess of the sum provided in a decree of a court of competent jurisdiction covering the support obligation.

It is further

ORDERED by consent that defendant shall not pursue after December 31, 1990 further collection proceedings against any non-custodial parent against whom a "state debt" has been assessed by the Director of the Division of Child Support Enforcement pursuant to the post–1984 amendment of Mo.Rev.Stat. § 454.465 (Supp.1990) and that defendant's above-described action shall cease against each individual non-custodial parent as that parent's case is administratively processed by the Division of Child Support Enforcement. It is further

ORDERED by consent that defendant shall cease future administrative action to assess a "state debt" against any non-custodial parents until final disposition of this class action suit. It is further

ORDERED pursuant to 28 U.S.C. § 1292(b) that this Court's granting of plaintiff's motion for class action certification shall be immediately appealable. It is further

ORDERED pursuant to 28 U.S.C. § 1292(b) that further action on this case is stayed pending disposition of defendant's stated plan to appeal this action.