JOURNAL ENTRY and OPINION
{¶ 1} Appellant James Germalic appeals pro se from the probate court's decision finding Pauline Kupchik to be incompetent and appointing a guardian. Germalic assigns twelve errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm the probate court's decision. The apposite facts follow.
 {¶ 3} On September 2, 2003, Adult Protective Services ("APS") received an anonymous tip. The tip alleged ninety-two-year-old Pauline Kupchik was unable to care for herself and her nephew, James Germalic, failed to provide the necessary care. It was further alleged that Germalic was using Kupchik's funds for his own benefit. APS investigated the matter and took Kupchik into custody.
 {¶ 4} A hearing was conducted on January 9, 2004, to determine whether Kupchik was incompetent and, if so, to appoint a guardian. Four individuals filed applications to become Kupchik's guardian: attorney Joseph McCafferty, Edward Pariza, who was related to Kupchik by marriage, Kupchik's sister-in-law, Angela Germalic, and James Germalic.[2] Attorney Greg Hoover represented Kupchik in this matter.
 {¶ 5} We have only a partial transcript of the proceedings, because it was not until after the first witness, Denise Oltmanns, an investigator for the probate court, testified that Germalic expressed his interest to have a court reporter present. The hearing was recessed to allow Germalic to retain the services of a court reporter. When the hearing reconvened, a court reporter was retained, but Germalic failed to return for the remainder of the hearing.
 {¶ 6} Karen Hall, who is a social worker with APS, testified that pursuant to the anonymous tip, she visited Kupchik's home on September 3, 2003. A neighbor, who had a key to the home, assisted her in gaining entry. Although it was afternoon, Kupchik was found in bed, fully dressed. She wore a sweater and had several blankets wrapped around her; she complained she was cold. Hall said Kupchik appeared confused; she did not recognize her neighbor of ten years, although the neighbor claimed to visit her frequently. There was little food in the home. Hall testified that compared with a visit she had with Kupchik in 2001, Kupchik had mentally deteriorated.
 {¶ 7} Hall immediately summoned emergency medical services; Kupchik was transported to Parma Hospital. Upon her discharge from the hospital, Kupchik was transfered to a nursing home, where she remains to this date. According to Hall, Kupchik has adjusted well to the nursing home, and the nursing care provided is beneficial to Kupchik.
 {¶ 8} According to the staff at the nursing home, Kupchik becomes "fretful" when Germalic visits her. He talks in a loud, demanding tone when conversing with her. Neighbors informed Hall that when Germalic lived with Kupchik, they could hear him yelling at her. The neighbors also told Hall that Germalic left Kupchik alone for extended periods of time.
 {¶ 9} The magistrate's report indicates that prior to the retention of the court reporter, Denise Oltmanns, who is an investigator for the probate court, testified that Kupchik was served notice of the hearings twice, and the proceedings were explained to her. In spite of this, Kupchik expressed no interest in attending the hearing. Oltmanns testified that Kupchik was unable to give any information regarding her finances; Kupchik was able to feed herself, but was unable to recognize her own physical or mental impairments. Kupchik was not aware she was in a nursing home.
 {¶ 10} Dr. Polster submitted an evaluation of Kupchik. According to his evaluation, Kupchik suffers from dementia. Dr. Polster recommended a guardian be appointed because Kupchik was unable to care for herself or her property without assistance.
 {¶ 11} Based on the above evidence, the magistrate appointed attorney McCafferty as Kupchik's guardian. Germalic filed his objections to the magistrate's report. A hearing was conducted to address Germalic's attorney's request to admit additional evidence, which consisted of Kupchik's will, living will, power of attorney, and evidence that other competency hearings were conducted. Germalic also attempted to introduce evidence of a notarized letter in which Kupchik allegedly fired her attorney. The trial court refused to consider or permit these documents to be admitted into evidence.
 {¶ 12} Germalic was also permitted to address the court and engaged in a rambling speech, which, according to the trial court lasted 45 minutes. In this speech, Germalic admitted he used Kupchik's money, which he claimed was their joint money, to travel the country to espouse his political and religious beliefs to others. Germalic also attempted to introduce evidence and make arguments, which were not presented at the original hearing. When the court explained to Germalic that he could not enter evidence nor make arguments that he could have presented at the competency hearing, Germalic explained to the court that he left the original hearing because he believed he was being entrapped by his neighbor and Kupchik's attorney.
 {¶ 13} The trial court subsequently overruled Germalic's objections and adopted the magistrate's recommendations. Germalic now appeals.
 {¶ 14} In his first, second, sixth, seventh, and eighth assigned errors, Germalic argues that the APS' intrusion into Kupchik's home was unlawful; Kupchik was prohibited from attending the hearing; attorneys Hoover and Swisher engaged in fraud; McCafferty financially benefitted by becoming guardian; and attorneys McCafferty and Hoover were in collusion.
 {¶ 15} Our review of the record indicates Germalic never raised these errors in his objections to the magistrate's report, nor did he make these objections at the competency hearing, which he left prior to testifying. He cannot raise errors on appeal which could have been raised below. Civ.R. 53(E)(3)(d) states in pertinent part that, "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
 {¶ 16} As the court explained in Proctor v. Proctor,[3] this requirement,
"* * * merely follows the well-established case authority that anappellate court will not consider any error which counsel for a partycomplaining of the trial court's judgment could have called but did notcall to the trial court's attention at a time when such error could havebeen corrected or avoided by the trial court. (Citations omitted).Accordingly, * * * we hold that an assignment of error based upon thetrial court's adoption of the referee's finding of fact is waived unlessan objection to that finding of fact is contained in the party's writtenobjections to the referee's report."
 {¶ 17} Civ.R. 53(E)(3)(c) also provides in pertinent part:
"(c) * * * Any objection to a finding of fact shall be supported by atranscript of all the evidence submitted to the magistrate relevant tothat fact or an affidavit of that evidence if a transcript is notavailable."
 {¶ 18} Pursuant to this rule, a party challenging the factual findings of a magistrate is required to provide the trial court with a transcript of the hearing before the magistrate or an affidavit to support the objections.[4] A trial court may adopt a magistrate's findings of fact without conducting an independent review of the evidence where the party objecting to the magistrate's report fails to do either of these things.[5]
 {¶ 19} Here, the trial court noted at the Civ.R. 53(E) hearing that Germalic failed to file a transcript of the magistrate's hearing or an affidavit in support of his allegations as required by Civ.R. 53. The trial court was thus not able to conduct an independent review of the magistrate's conclusion that Kupchik was incompetent and in need of a guardian. Accordingly, we conclude that the trial court did not abuse its discretion by adopting the magistrate's report. Germalic's first, second, sixth, seventh, and eighth assigned errors are overruled.
 {¶ 20} Germalic argues in his fourth and ninth assigned errors that the trial court's conduct at the Civ.R. 53(E) hearing was condescending toward Germalic and his attorney. Germalic contends the trial court failed to take seriously his accusation that his neighbor and Kupchik's attorney were attempting to entrap him; the trial court yelled at his attorney; and the court informed Germalic's attorney the only avenue to address the evidentiary problems was to have an evidentiary hearing, only to deny such redress.
 {¶ 21} A review of the magistrate's report does not indicate there was any evidence presented of entrapment. Germalic left the hearing without presenting any evidence. Moreover, Germalic never raised this objection in his written objections to the magistrate's report. Therefore, Germalic waived any error concerning this matter.[6]
 {¶ 22} Regarding the trial court yelling at Germalic's attorney, the trial court apologized to the attorney on the record. No objection was made to this incident, nor was a motion for a mistrial made. Accordingly, any error regarding this is waived.[7]
 {¶ 23} Germalic's contention that the trial court refused to hold an evidentiary hearing to consider new evidence will be addressed in assigned error ten. Germalic's fourth and ninth assigned errors are overruled.
 {¶ 24} Germalic contends in his fifth assigned error that the trial court destroyed exhibits, including a notarized letter by Kupchik, in which she fired attorney Hoover, and two notebooks containing exhibits.
 {¶ 25} The record does not indicate that any of these exhibits were ever entered into the record. Therefore, no prejudice resulted from their alleged absence. Accordingly, Germalic's fifth assigned error is overruled.
 {¶ 26} In his tenth and third assigned errors, Germalic argues that, at the Civ.R. 53(E) hearing, the trial court erred by prohibiting additional evidence to be introduced after the magistrate's report was filed. The evidence consisted of Kupchik's 1997 will, living will, and power of attorney, and a notarized letter in which Kupchik terminated the services of her attorney, George Hoover. Germalic also contended the magistrate failed to consider two other competency hearing evaluations that were conducted regarding Kupchik.
 {¶ 27} The trial court has discretion to hear or disregard new evidence offered after the magistrate's report is filed.[8] Civ.R. 53(E)(6) provides that "the court may disregard any evidence that was not submitted to the referee unless the complaining party demonstrates that with reasonable diligence he or she could not have discovered or produced that evidence for the referee's consideration."
 {¶ 28} Germalic failed to show he exercised reasonable diligence in trying to obtain this evidence for the magistrate's consideration. Germalic did not even attempt to obtain the two other alleged competency evaluations. Thus, we cannot determine if these reports contained different conclusions from Dr. Polster's evaluation or merely reiterated what he concluded. Under these circumstances, we cannnot say the trial court abused its discretion by refusing to consider this evidence.
 {¶ 29} In his eleventh assigned error, Germalic argues the evidence was insufficient to support a finding that Kupchik was incompetent.
 {¶ 30} It is well settled law that the probate court has broad discretion in matters involving the appointment of a guardian, but the court must act in the best interest of an incompetent.[9] Further, as the Ohio Supreme Court in In re Guardianship of Rudy[10] held:
"A court of appeals may review findings of fact for an abuse ofdiscretion by the trial court. But it cannot make a finding of fact thatshould have been made by the trial court, nor extract such a finding fromthe trial court's opinion where no finding was made."
 {¶ 31} In the instant case, we have only a partial transcript, which does not include the testimony of the probate court investigator Denise Oltmanns. The magistrate's findings of fact, however, indicated that Denise Oltmanns testified as follows:
"Ms. Oltmann testified that the respondent was unable to give anydetailed information regarding her finances. She observed that PaulineKupchik was able to feed herself, but she was unable to prepare foods.Pauline Kupchik was unable to recognize her own physical and mentalimpairments. She testified that the respondent did not know she was in anursing home and was generally unaware of her surroundings."[11]
 {¶ 32} Oltmann also testified that Kupchik believed that "there was a war going on immediately outside her window."[12]
 {¶ 33} Dr. Daniel Polster evaluated Kupchik and concluded she was suffering from dementia. Kupchik was unable to answer basic questions and was unaware of her medical condition or any of her medications. He recommended the appointment of a guardian due to the fact she was unable to care for herself or her property.
 {¶ 34} Based on this evidence, we find the trial court did not abuse its discretion in finding Kupchik to be incompetent. Moreover, Germalic's contention that Kupchik is competent, is contradictory to his filing of an application to become Kupchik's guardian. Accordingly, Germalic's eleventh assigned error is overruled.
 {¶ 35} Although Germalic assigns a twelfth error, he does not set forth an argument in support of it in his brief. According to App.R. 12(A)(2), "the court may disregard an assignment of error presented for review if the party raising it fails * * * to argue the assignment separately in the brief, as required under App.R. 16(A)." We therefore decline to address Germalic's twelfth assigned error.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Probate Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Gallagher, J., Concur.
 APPENDIX ASSIGNMENTS OF ERROR:
"I. The court erred in not asking Ms. Cassidy, Mr. Hoover, or Mr. McCaffertry to produce warrant upon probable cause, supported by oath or affirmation right there."
"II. The court erred in not allowing Pauline Kupchik to go to her hearings, November 19, 2003; January 9, 2004, and March 4, 2004."
"III. The court erred in not taking [sic] with utmost seriousness the notarized document firing Greg Hoover, UAW-GM lawyer."
"IV. The court erred in not giving substance to my allegation that Jack Moga and Greg Hoover were trying to entrap me."
"V. The judge erred in purposely destroying my evidence which is the criminal offense of obstruction of justice."
"VI. The court erred in not examining the pattern of fraud by Greg Hoover, and his predecessor, Jaime Swisher, UAW-GM Lawyers [sic]."
"VII. The court erred in not investigating how McCafferty got in and the financial gain he incurs by being guardian."
"VIII. The court erred in not examining the collusion between Hoover and McCafferty."
"IX. The court erred in telling Frank that one of the avenues open was to go back to the evidentiary phase and then denying it in the court. Abuse of discretion, further an abuse of power to shout down Frank in such a horrible way."
"X. The court erred in being vacillating, double-minded, and arbitrary in first allowing attorney Frank Gasper to give evidence, and then to disallow him to give it."
"XI. The medical evidence was insufficient to prove incompetency."
"XII. The court erred in not knowing or telling where Pauline Kupchik's $500,000 in bank books were. The bank books were robbed in a separate entry on September 4, 2003. This is a second violation of Pauline's Fourth Amendment Rights. The Court: Maybe they don't exist."
[1] See Appendix.
[2] Angela Germalic subsequently withdrew her application.
[3] (1988), 48 Ohio App.3d 55, 56.
[4] Eash v. Eash (1984), 14 Ohio App.3d 298, 298.
[5] State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 730, 1995-Ohio-272.
[6] State ex. rel. Donah v. Windham Exempted Village School Dist. Bd.of Educ. (1994), 69 Ohio St.3d 114.
[7] State v. Williams (1974), 39 Ohio St.2d 20.
[8] Civ.R. 53(E)(6); Ferguson v. Ferguson (1992), 76 Ohio App.3d 818;Wilson v. Brown (1987), 41 Ohio App.3d 77, 78.
[9] See In re Bednarczuk (1992), 80 Ohio App.3d 548; In reGuardianship of Schumacher (1987), 38 Ohio App.3d 37.
[10] (1992), 65 Ohio St.3d 394, 396.
[11] Magistrate's Report at 2.
[12] Magistrate's Report at 3.